358 S.E.2d 782

**STATE of West Virginia**

v.

**Lanny CROUCH, Jr.**

**No. 17247.**

Supreme Court of Appeals of West Virginia.

May 15, 1987.

Rehearing Denied July 16, 1987.

Gayle Fiedler, Asst. Atty. Gen., for appellant.

D. Grove Moler, Moler & Staton, Mullens, for appellee.

BROTHERTON, Justice:

Lanny Crouch, Jr. appeals from a jury verdict in the Circuit Court of Wyoming County, which found him guilty of first degree murder without a recommendation of mercy. The primary error alleged is that the appellant's written confession was erroneously admitted under the rule in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

Kelly Wiles was shot and killed while standing in the door of his residence, which is located on Pinnacle Creek in Wyoming County, in the early morning hours of April 24, 1985. Around noon the same day, Greg Ervin and his father came to the Wyoming County sheriff's office and told the sheriff that Greg Ervin had seen the appellant, Lanny Crouch, Jr., shoot Kelly Wiles. Crouch was arrested at his home shortly thereafter, and was taken directly to a magistrate. He waived a preliminary hearing, but did request appointment of an attorney. The sheriff was present at the arraignment and admitted knowledge of the request for an attorney. Crouch was then taken to the Wyoming County jail. At 4:37 p.m., still on April 24, Crouch gave a statement to Deputy Sheriff Janet Morgan, which said that he shot Kelly Wiles. The form on which the statement was recorded included a printed statement that "I hereby expressly waive my right to the advice of counsel, and voluntarily make the following statement to the aforesaid person, knowing that any statement I make may be used against me in the trial or trials for the offense or offenses concerning which the following statement is herein

made." No attorney had yet been appointed, and none was present, when Crouch made his statement.

Deputy Sheriff Janet Morgan testified at trial that Lanny Crouch approached her at the jail, calling her by name, and asked if he could talk to her privately. She asked the sheriff, who said it would be all right to take a statement "if he wants to talk." A printed form showing that Lanny Crouch, Jr. had been advised of his rights prior to the taking of the statement was introduced in conjunction with her testimony. Lanny Crouch did not testify at trial, but did testify at an *in camera* hearing on the issue of admitting the confession. He said that Janet Morgan approached him, saying that she was a friend of his father's and would treat him like his father would treat her son. He said that she asked him to come downstairs to. her office to talk, and that she would take some notes for the purpose of conveying a message to his father. He also testified that he thought he was signing a release of belongings, not a confession. Crouch said he was not told what was in the written statement, but was only told to sign it. However, Deputy Sherill Parker also testified that he had read Crouch the statement and asked him if it was his prior to the signing. Crouch also insisted that he told Janet Morgan he did not commit the crime.

Based on the evidence introduced in the courtroom and at the *in camera* hearing, the trial court found that Crouch had voluntarily approached Deputy Sheriff Janet Morgan, and that he had made a voluntary and knowing waiver of his right to counsel, and that the confession should therefore be admitted into evidence.

I.

The law on this issue is set out clearly in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).[1] In that case, Justice Stevens, writing for a five-

---

[1] *Michigan v. Jackson* was a consolidated appeal by two unrelated convicts, Bladel and Jackson. Each had requested the appointment of counsel at his arraignment, but both gave inculpatory statements to the police soon thereafter, without

the advice of counsel. The police initiated the interrogation in both cases, and in both cases properly advised the defendants of their *Miranda* rights prior to taking the statements. 106 S.Ct. at 1406–07.

member majority, held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid."[2] 106 S.Ct. at 1411. This holding makes the outcome in this case depend on whether the interrogation was initiated by Deputy Morgan or by the defendant. The evidence on this issue was conflicting, and the only testimony corroborating either side was that of Pate King, a part-time investigator, who testified that he saw the defendant approach Deputy Morgan.

The trial court, which had the opportunity to observe the demeanor of all the witnesses and to hear all the evidence, found as a fact that Lanny Crouch initiated the conversation that led to his confession. There being evidence to support this conclusion, we do not disturb it.

■ Nevertheless, merely because the accused initiated the conversation does not necessarily mean he waived his right to counsel. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), provides a two-part test for determining whether or not a recantation of a request for counsel was effective. First, the accused must initiate a conversation, and second, must knowingly and intelligently, under the totality of the circumstances, waive his right to counsel. *See* 451 U.S. at 486, n. 9, 101 S.Ct. at 1885, n. 9. Thus, to be effective, the accused must initiate a conversation which shows an intelligent and knowledgeable desire for a generalized discussion about the investigation. A statement which is merely a necessary inquiry arising out of the incidence of the custodial relationship will not satisfy this test. *See Oregon v. Bradshaw*, 462 U.S. 1039, 1045, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983). Thus, an accused who merely asks to make

a telephone call would not have made a waiver of his right to counsel. In this case, however, Crouch told the deputy that he wanted to talk to her and that he knew he was in some trouble. Clearly, this tends to show a willingness to enter into a generalized discussion. Further, Crouch was informed of his *Miranda* rights again by Deputy Morgan and signed a *Miranda* form, initialing each right. He had a high school education, with some college. Therefore, he could not seriously argue that he had no idea of what he was doing. Crouch knowingly and intelligently waived his sixth amendment right to counsel when he initiated the conversation with Deputy Morgan. He therefore did not fall within the prohibition of *Michigan v. Jackson*, and there was no error by the trial court in admitting his confession.

### II.

■ The defendant also objected to the trial court's refusal to give two jury instructions. In both cases the instruction was repetitious of other instructions which had been given to the jury. Instructions that are repetitious should not be given to the jury by the trial court. *See* syl. pt. 7, *State v. Cokeley*, 159 W.Va. 664, 226 S.E.2d 40 (1976). Therefore, we find no error in the trial court's refusal to give the instructions.

### III.

■ During the trial, a juror, Karen Sizemore, indicated that she remembered an incident involving one of the prosecution witnesses. Eight or nine years earlier, the witness had come to her home drunk and said the devil was chasing him and he wanted help. Unfortunately, she had not recognized the name during the *voir dire*, and therefore did not indicate that she knew the witness. However, seeing the witness testify jogged her memory. Be-

**2.** The closest West Virginia case is *State v. Wyer*, 173 W.Va. 720, 320 S.E.2d 92 (1984). That case followed the Supreme Court rule in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which held that if a defendant indicates his desire to have counsel during an interrogation, the police must stop the interrogation until counsel is made available, unless the defendant initiates further communications with the police and evidences his desire to waive his sixth amendment right to counsel. *State v. Wyer*, 173 W.Va. at 733, 320 S.E.2d at 105. The difference between the two rules is that *Michigan v. Jackson* expands the non-interrogation rule to apply when counsel is requested at arraignment even though not requested at the interrogation.

cause of the incident, Sizemore indicated that she could not believe everything that the witness would say. After all the evidence had been presented, Sizemore was removed from the jury and an alternate, who had been present during all of the trial, was put in her place.

Matters of qualifications of jurors are left to the discretion of the trial court and will not be disturbed, absent an abuse of the discretion. *See State v. Harshbarger*, 170 W.Va. 401, 294 S.E.2d 254, 257 (1982). We find no abuse of the trial court's discretion in this case. "The object of the law is, in all cases in which juries are impaneled to try the issue, to secure men for that responsible duty whose minds are wholly free from bias or prejudice either for or against the accused...." Syl. pt. 1, in part, *State v. Hatfield*, 48 W.Va. 561, 37 S.E. 626 (1900). *See also*, syllabus, *State v. Archer*, 169 W.Va. 564, 289 S.E.2d 178 (1982). Juror Sizemore indicated that she had a bias concerning one of the witnesses. She therefore was not an impartial juror. Fortunately, an alternate was available and the trial court was able to replace Sizemore with an unbiased alternate. This was the correct decision. Crouch was not prejudiced.

Because our review found no error in the trial of Lanny Crouch, Jr., his conviction is affirmed.

McGRAW, J., deeming himself disqualified, did not participate in the consideration or decision of this case.