386 S.E.2d 117

**STATE of West Virginia**

v.

**Daney L. MARCUM.**

No. 18651.

Supreme Court of Appeals of West Virginia.

Oct. 19, 1989.

Dwight J. Staples, Henderson & Henderson, Huntington, for Daney L. Marcum, appellant.

Thomas J. Gillooly, Deputy Atty. Gen., Attorney General's Office, Charleston, for the State of WV, appellee.

NEELY, Justice:

Daney L. Marcum appeals his conviction of first-degree murder and arson in the death of Lonnie Marcum and the burning of his house in Wayne County.

Lonnie Marcum, a man in his seventies, lived on Jenny's Creek in rural Wayne County. He was thought to keep money about his house. On 22 December 1985, neighbors discovered that Lonnie Marcum's house was on fire. They entered the house and found Lonnie Marcum dead. He had been killed some time before with three .25 caliber bullet shots to the head.

The prosecution's theory was that Daney Marcum borrowed a .25 caliber pistol from his sister, Amanda Sue Marcum, on Friday, 20 December 1985. Two days later, Sunday, Ms. Marcum reported the gun stolen. The prosecution maintained that on Saturday, the defendant, Daney Marcum, used the gun to murder Lonnie Marcum and

took between $3500 and $6000 from the victim's house. The defendant gave $500 to his sister Amanda for her silence. That Sunday, the defendant paid Ermil Ray Newsome $50 to set Lonnie Marcum's house afire.

Some of the evidence against the defendant included confessions to his sister Amanda, on the day of the murder, and to a cellmate, while in jail awaiting trial. Amanda Marcum testified that she had lent the weapon to the defendant, and that it had not been stolen. Neighbors saw Daney Marcum and Ermil Newsome together on the day of the fire. Under police questioning, the defendant gave police directions for finding tools and fruits of the crime, which were then introduced into evidence against him. Ermil Newsome confessed to the police that he set the fire, but claimed to know nothing about the murder of Lonnie Marcum. He said Daney Marcum told him that there was no one in the house and that the defendant planned to buy the land, without the house, for $2500. Mr. Newsome's confession was introduced as evidence against the defendant.

The defendant was arrested and charged on 24 December 1985. At that time, he was read his *Miranda* rights and signed a form to attest to that. On the form, he checked a box noting that he wished to have counsel appointed for him. Counsel was not actually appointed for him until 27 December 1985. In the meantime, he volunteered information to his police custodians, waiving in writing his right to have a lawyer present during the discussions.

## I

The defendant maintains here that it was reversible error for the trial court to introduce against him the confession of his accomplice Ermil Newsome. Mr. Newsome had already pled guilty to arson and risked no criminal liability from testifying against the appellant. Nonetheless, Mr. Newsome refused to testify at trial, claiming his life was in "supreme danger." He was jailed for contempt of court. He was declared unavailable as a witness, and his written confession was introduced under the exception to the hearsay rule for statements against penal interest. Rule 804(b)(3), *W.Va.R.Evid.* The defendant was thus unable to cross-examine Mr. Newsome on his statement.

This Court has recently outlined the law to be applied by a trial court in deciding, under Rule 804, *W.Va.R.Evid.*, whether to admit or exclude out-of-court statements by an accomplice who is unavailable for cross-examination. *State v. Mullens,* 179 W.Va. 567, 371 S.E.2d 64 (1988). In *Mullens,* we held:

A confession of an accomplice which inculpates the accused is presumptively unreliable. Where the accomplice is unavailable for cross-examination, the admission of the confession, absent sufficient independent "indicia of reliability" to rebut the presumption of unreliability, violates the Sixth Amendment right of confrontation.

Syl. Pt. 2, *Id.,* 179 W.Va. at 568, 371 S.E.2d at 65. Independent indicia of reliability may be garnered from all the circumstances surrounding the statement, including whether the statement was spontaneous or a result of custodial police questioning, whether the statement was thoroughly and unambiguously adverse to the declarant's penal interest, and whether the statement was corroborated by other evidence presented at trial, including the physical evidence. *Id.,* note 9; *See also, Lee v. Illinois,* 476 U.S. 530, 551, 106 S.Ct. 2056, 2067, 90 L.Ed.2d 514 (1986) (Blackmun, J., dissenting).

In this case, Mr. Newsome's confession, implicating the defendant, lacks sufficient independent indicia of reliability to overcome the presumption of unreliability. Mr. Newsome's statement was made in police custody, and not spontaneously; it was not unambiguously opposed to Mr. Newsome's penal interest, because the statement shifted blame for the murder away from Mr. Newsome and, implicitly, toward the appellant. There was evidence to corroborate the defendant's involvement in the crime, but not to corroborate Mr. Newsome's claim that he, Newsome, took no part in the murder of Lonnie Marcum. We hold that admission of Mr. Newsome's con-

fession under the circumstances violated the appellant's right, under the Sixth Amendment to the U.S. *Constitution,* to confront the witnesses against him. On that ground, we reverse the defendant's conviction and grant him a new trial.

## II

The defendant also asserts reversible error in the admission of certain physical evidence against him, specifically a box containing $3000 alleged to have been stolen from the victim. Because the issue is likely to recur on retrial, we consider the claim now.

The police found this evidence by following instructions given them during discussions with the defendant between 24 December and 27 December 1985. The defendant maintains that these discussions took place in violation of his Sixth Amendment right to have counsel present during questioning. If the directions on where to find evidence were extracted from the defendant unlawfully, then the physical evidence was "fruit of the poisonous tree," subject to the Sixth Amendment's Exclusionary Rule.

■ The Supreme Court of the United States has set out a simple test for Sixth Amendment violations under such circumstances. Once the accused is in custody, has been read his *Miranda* rights, and has requested a lawyer, statements made thereafter without the accused's lawyer present are inadmissible, unless the accused initiated the discussion. *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *State v. Barrow,* 178 W.Va. 406, 359 S.E.2d 844 (1987); *State v. Crouch,* 178 W.Va. 221, 358 S.E.2d 782 (1987). If it is determined that the accused did initiate the discussion, it must still be shown that the accused knowingly waived his right to have a lawyer present during the discussion. *Id.* As this Court has held:

For a recantation of a request for counsel to be effective: (1) the accused must initiate a conversation; and (2) must knowingly and intelligently, under the totality of the circumstances, waive his right to counsel.

Syl. Pt. 1, *State v. Crouch,* 178 W.Va. 221, 358 S.E.2d 782 (1987).

In this case, Daney Marcum did request a lawyer when he was charged with these crimes, and his statements to the police leading to the discovery of the physical evidence were made before a lawyer had been appointed for him.

The trial court found that the defendant did knowingly waive the right to have a lawyer present during the discussions at issue. However, in its *in camera* hearing on whether to admit this physical evidence, the trial court made no finding about who initiated the discussions leading to the discovery of the evidence. This is because the current rule in this area was announced by the U.S. Supreme Court at about the same time in 1986 as Daney Marcum's trial, in *Michigan v. Jackson, supra.* Counsel did not bring the case to the trial court's attention. If the same evidence is offered again in the new trial, the trial court should make a finding at that time on who initiated the discussions leading to discovery of this physical evidence. We hesitate to make that finding ourselves on the bare record before us.[1]

Accordingly, for the reasons set forth in Section I above, the judgment of the Circuit Court is reversed and the case is remanded for a new trial.

Reversed and Remanded.

---

**1.** Because this Court must remand this case for a new trial, we do not address the other assignments of error raised by Daney Marcum.